UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ACTIFIO, INC., <br><br> Plaintiff, <br><br> v. <br><br> DELPHIX CORP., <br><br> Defendant. | Civil Action No. 14-13247-DJC |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                    March 17, 2015

### I. Introduction

Plaintiff Actifio, Inc. ("Actifio") has filed this patent infringement lawsuit against Delphix Corp. ("Delphix"), alleging that Delphix's "Agile Data Platform" products and services infringe Actifio's patents, U.S. Patent No. 8,299,944 ("'9944 patent") and U.S. Patent No. 8,788,769 ("'769 patent"). D. 1 ¶¶ 15-17. Delphix has moved to dismiss, stay or transfer this action under first-to-file principles and pursuant to 28 U.S.C. § 1404(a). D. 7 at 1-2. For the reasons stated below, Delphix's motion is DENIED.

### II. Standard of Review

In the patent context, Federal Circuit law governs the first-filed analysis. See J. P. Sercel Assocs., v. New Wave Research, No. CIV. 03-331-JD, 2003 WL 22299014, at *1 (D.N.H. Oct. 7, 2003) (applying First Circuit law to transfer motion and Federal Circuit law to first-filed analysis, as "district courts follow Federal Circuit precedent in considering the first-filed action rule in patent cases"). First Circuit law applies to motions to transfer under 28 U.S.C. § 1404(a).

In re EMC Corp., 677 F.3d 1351, 1354 (Fed. Cir. 2012) (providing, "transfer motions are governed by regional circuit law"). This approach to first-filed considerations promotes uniformity in patent cases. See Genentech, Inc. v. Eli Lilly & Co., 998 F.2d 931, 937 (Fed. Cir. 1993) (providing "[t]he question of whether a properly brought declaratory action to determine patent rights should yield to a later-filed suit for patent infringement raises the issue of national uniformity in patent cases, and invokes the special obligation of the Federal Circuit to avoid creating opportunities for dispositive differences among the regional circuits"), abrogated on other grounds by Wilton v. Seven Falls Co., 515 U.S. 277 (1995).

"The 'first-to-file' rule is a doctrine of federal comity, intended to avoid conflicting decisions and promote judicial efficiency, that generally favors pursuing only the first-filed action when multiple lawsuits involving the same claims are filed in different jurisdictions." Merial Ltd. v. Cipla Ltd., 681 F.3d 1283, 1299 (Fed. Cir. 2012). Although the Federal Circuit has not conclusively determined whether mirror image patents are required for the first-filed rule to apply, a difference in patents generally weighs against such a finding. See Thales Airborne Sys. S.A. v. Universal Avionics Sys. Corp., No. CIV 05-853-SLR, 2006 WL 1749399, at *4 (D. Del. June 21, 2006) (declining to apply first-filed rule and providing, "while the Federal Circuit has a strong preference for adhering to the first-filed rule, its application seems limited to actions involving the same patents"). Different jurisdictions apply different tests to determine whether patent lawsuits involve the same claims, some focusing more on shared patents than others. Compare Pragmatus AV, LLC v. Yahoo! Inc., No. 11-902, 2013 WL 4629000, at *10 (D. Del. Aug. 28, 2013), report and recommendation adopted, No. 11-902-LPS-CJB, 2013 WL 5755250 (D. Del. Oct. 22, 2013) (declining to apply first-filed rule and considering overlap of parties, whether the cases involve the same patents, possible overlap of legal claims and the risk of

inconsistent judgments) with AmberWave Sys. Corp. v. Intel Corp., No. 2:05-CV-321, 2005 WL 2861476, at *2 (E.D. Tex. Nov. 1, 2005) (applying first-filed rule despite different patents, based on the "substantial overlap" between the cases, which "does not require that the core issues be identical, but that the two actions will involve closely related questions or subject matter").

A court may transfer a civil action under 28 U.S.C. § 1404(a) "[f]or the convenience of parties and witnesses, in the interest of justice." "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 12 (1st Cir. 2009) (quotation omitted). Factors relevant to this consideration include "(1) the convenience of the parties, (2) the convenience of the witnesses, (3) the relative ease of access to sources of proof, (4) the availability of process to compel attendance of unwilling witnesses, (5) cost of obtaining willing witnesses, and (6) any practical problems associated with trying the case most expeditiously and inexpensively." F.A.I. Elec. Corp. v. Chambers, 944 F. Supp. 77, 81 (D. Mass. 1996) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)). "In addition to the convenience of parties and witnesses, the factors to be considered by the court include the availability of documents; the possibility of consolidation; and the order in which the district court obtained jurisdiction." Coady v. Ashcraft & Gerel, 223 F.3d 1, 11 (1st Cir. 2000). A defendant moving to transfer must combat the "strong presumption in favor of the plaintiff's choice of forum." Sigros v. Walt Disney World Co., 129 F. Supp. 2d 56, 71 (D. Mass. 2001) (citation omitted).

## III. Factual Background

Actifio is a data storage technology company based in Waltham, Massachusetts. D. 1 ¶¶ 4, 9. Delphix also produces data storage products and is based in Menlo Park, California. Id. ¶

3

10; D. 8 at 7. Actifio alleges that Delphix's continued manufacture, use, sale, offer for sale and/or importation of the Agile Data Platform line of products infringes on the '9944 patent and the '769 patent. D. 1 ¶¶ 15-19.

## IV. Procedural History

In October 2013, Delphix filed suit in the Northern District of California accusing Actifio of infringing three of Delphix's patents, Nos. 8,150,808 ("'808 Patent"), entitled "Virtual Database System," 8,161,077 ("'077 Patent"), entitled "Datacenter workflow automation scenarios using virtual databases" and 8,548,944 ("'944 Patent"), entitled "De-duplication based backup of file systems," D. 8-11. It later amended its complaint to add Patent No. 8,468,174 ("'174 patent") entitled "Interfacing with a Virtual Database System" and Patent No. 8,566,361 ("'361 patent"), entitled "Datacenter Workflow Automation Scenarios Using Virtual Databases." D. 8-12 at 4-5. In March 2014, Delphix filed a declaratory judgment action in the same court after receiving an infringement notice from Actifio concerning two additional patents, U.S. Patent Nos. 6,959,369 ("'369 patent"), entitled "Method, system, and program for data backup" and 6,732,244 ("'244 patent"), entitled "Instant virtual copy technique with expedited creation of backup dataset inventory from source dataset inventory." D. 8-14 at 4-5. Delphix asserts Actifio purchased these earlier-dated IBM patents following the filing of the initial lawsuit. D. 8 at 8. Thereafter, Actifio filed counterclaims in the declaratory judgment action regarding the '369 and '244 patents alleging infringement by Delphix's Agile Data Platform line of products. D. 8-15. The declaratory judgment action was then consolidated with Delphix's patent infringement action, D. 8 at 10, and the court granted a motion to amend to add a trade secret claim in September 2014. Delphix Corp. v. Actifio, Inc., No. 13-04613, 2014 WL 4792232, at *1 (N.D. Cal. Sept. 24, 2014). In November 2014, that court stayed the action as to the Delphix patents

pending *inter partes* review, but allowed discovery to continue as to the Actifio patents and Delphix's trade secret claim. D. 51 at 4-5 (transcript of January 21, 2015 hearing). A Markman hearing in that matter is scheduled for August 15, 2015. Id. at 5.

In July 2014, Actifio filed suit against Delphix in the District of Delaware alleging infringement by Delphix's Agile Data Platform on the same patents asserted in this action, the '9944 and '769 patents. Delphix Corp. v. Actifio, Inc., No. 1:14-cv-00969-GMS (D. Del. July 23, 2014). Following communications between counsel in which Delphix indicated it would move to transfer, D. 8-17, Actifio voluntarily dismissed the action. D. 8 at 11; D. 26 at 9.

Actifio filed this case on August 6, 2014, again alleging infringement by Delphix's Agile Data Platform as to its '9944 and '769 patents, originally asserted in the Delaware case. D. 1 ¶¶ 15-17. Delphix has now moved to dismiss, stay or transfer this action to the Northern District of California. D. 7. The Court heard the parties on the pending motion on January 21, 2015 and took the matter under advisement. D. 50.

**V.     Discussion**

Delphix seeks to dismiss, stay or transfer this action, contending that the pending case in the Northern District of California is first-filed, or in the alternative that the Court should grant a transfer pursuant to 28 U.S.C. § 1404(a). D.7 at 1-2. Delphix asserts the Northern District of California action is first-filed because the claims before this Court involve the same parties, products, and technology. D. 8 at 12-16. Further, Delphix contends transfer would promote judicial economy, is in the interest of justice and would avoid unnecessary inconvenience to the parties and to third parties. Id. at 16-23. Actifio counters that the patents asserted in each case are insufficiently related for first-filed principles to apply and that transfer under § 1404(a) is inappropriate, given Actifio's choice of forum in Massachusetts and consideration of the

5

convenience factors. D. 26 at 6-7. The Court concludes that neither first-filed principles nor consideration of § 1404(a) factors warrant transfer to the Northern District of California.

### A. Whether the California Action is First-Filed

The parties in this action are identical to those in the Northern District of California, Actifio's counterclaims involve the same accused product, Delphix's Agile Data Platform, and the patents at issue in both cases relate to virtualized data management and back-up technologies. D. 8 at 14. Additionally, Delphix asserts the infringement allegations result from the alleged misappropriation of information by a previous member of Delphix's Board of Directors who later founded Actifio, Ash Ashutosh. Id. at 8. Despite these similarities, and the resulting overlap of technologies and underlying facts, review of the patents, the lack of common prior art references, the lack of shared inventors and an absence of common claim construction issues militate against first-filed principles applying here. See Abbott Labs. v. Roxane Labs., Inc., No. 12-457, 2013 WL 2322770, at *14 (D. Del. May 28, 2013) (declining to find action first-filed when parties were "in essence the same, and there [would] be significant commonalities of fact and law among the two suits," because "the subject matter of the suits are different enough to render the first-filed rule inapplicable").

There are two patents asserted here. The '9944 patent, "System and method for creating deduplicated copies of data storing non-lossy encodings of data directly in a content addressable store," involves the storage of data via encoded form in hash tables, comparing snapshots of the hash table to determine whether changes have occurred and then storing a backup copy. D. 1-1 at 2; D. 40 ¶ 8 (providing, "[a]t a high level, the '9944 patent describes a particular method of organizing data in a data store using mathematical functions called hashes"). The patent's first claim refers to "[a] method of storing deduplicated images in which a portion of the image is

stored in encoded form directly in a hash table . . ." D. 1-1 at 36. It was issued in October 2012. Id. at 2. The '769 patent, "System and method for performing backup or restore operations utilizing difference information and timeline state information," involves a snapshot comparison of two successive point-in-time images of data, these snapshots providing a storage pool representing the changed data, with the difference in the snapshots sent to a second storage pool as a backup. Id. at 38; D. 40 ¶ 9 (providing the technology concerns "management and backup of point-in-time copies of data sets, moving those point-in-time copies between storage systems" and "save[s] storage space by storing only the information that has changed in an application between two points-in-time"). The patent's first claim refers to "[a] system for restoring data to a destination storage pool from back up point-in-time images . . ." D. 1-1 at 73. It was issued in July 2014. Id. at 38.

The patents Delphix asserts in the Northern District of California case involve similar, but not identical, technology. The '808 patent, issued in April 2012, involves the creation of a virtual database ("VDB") of point-in-time copies associated with a source database, which retrieves data that has changed from the previous point-in-time copy and is linked to a database storage system. D. 8-1 at 2. The patent's first claim refers to "[a] method for creating a virtual database system . . ." Id. at 45. The '174 patent, issued in June 2013, D. 8-5 at 2, appears similar to the patent above and identifies its first claim as "a method of creating a virtual database system . . ." Id. at 26. The '077 patent, issued in April 2012, also concerns the creation of a VDB associated with point-in-time copies of a source database, employed for testing and development. D. 8-2 at 2. Its first claim is "[a] method for test and development of databases and database applications using a virtual database system . . ." D. 8-2 at 46. The '361 patent, issued in October 2013, relates to the use of a VDB to replicate files for efficient use and storage,

7

similar to the patents above. D. 8-4 at 2. Its first claim is "[a] method for replicating a database . . ." Id. at 45. The '994 patent, issued in October 2013, also involves the use of point-in-time data snapshots copied from a backup file system, D. 8-3 at 2, and its first claim refers to "[a] method for performing backup of file systems . . ." Id. at 20.

The patents at issue in Actifio's counterclaims in the Northern District of California, referred to by the parties as the "IBM patents" predate all the other patents. The '369 Patent, issued in October 2005, involves the creation of a backup copy of source data with a dataset inventory, which is then copied to a storage medium including an identifier for each dataset, eliminating the need to issue image copies for the recovery of individual data sets. D. 8-6 at 2. Its first claim is "[a] method for data backup . . ." Id. at 19. The '244 patent, issued in May 2004, relates to rapid creation of backup datasets while write operations to source data are suspended, cross-referencing datasets in the source data and creating a backup dataset inventory. D. 8-7 at 2. Its first claim is "[a] method of copying a body of source data . . ." Id. at 11.

Actifio contends that the patents-in-suit here are dissimilar from the patents in the Northern District of California action because the patents there do not include the use of a hash table, as employed in the '9944 patent, and the '769 patent's use of storage pools is unique. D. 26 at 17-18. Moreover, the '769 patent issued after the initiation of the California lawsuit, July 22, 2014. D. 1-1 at 38. Actifio's Senior Director of Infrastructure Engineering attests that the patents in the Northern District of California "are unrelated to the methods of storing compressed data in a hash table described in the '9944 patent," that the concept of point-in-time copies predate the patents asserted in both actions and that "[n]one of the [patents at issue in California] describe or claim the methods of data synchronization between two different storage pools as claimed in the '769 patent." D. 27 ¶¶ 9-11. Delphix contends that despite the use of hash tables

8

in the '9944 patent and the allegedly unique use of data storage pools, the technology contained with the patents is sufficiently related given the same underlying function, "the use of data 'snapshots' to save space in storage systems using data virtualization." D. 39 at 11-12. Additionally, Delphix provides an affidavit explaining that the '769 patent is more closely related to the Delphix patents asserted in the Northern District of California than the consolidated IBM patents because they all involve point-in-time copies, and the '769 and '808 patents describe similar use cases for the point-in-time copies. D. 40 ¶¶ 9-10. At the motion hearing, Delphix reiterated how the '9944 and '769 patents asserted in the Northern District of California action all concern data virtualization technology and employ point-in-time copies for multiple purposes. D. 51 at 11-12.

There is overlap in the technology, as evidenced above. But whether common technology warrants an application of the first-filed rule is considered on a case-by-case basis, and the Court is not inclined to apply the first-filed rule as broadly as Delphix urges it to do. Although the Court previously applied the first-filed rule to actions involving different pharmaceutical drug patents in Idenix Pharms., Inc. v. Gilead Sci., Inc., No. 13-cv-13052, Dkt. No. 39 (D. Mass. June 30, 2014), in that case, as Actifio has noted, the patents there involved the same chemical compound, shared common inventors, were developed by the same entity, had common prior art references and were issued within thirty minutes of one another. D. 51 at 19-21. Here, the patents share no common inventors, were developed by separate entities, do not share common prior art references and one of the patents was issued after the California lawsuit was filed. Id. The Court agrees with Actifio that the shared realm of technology and the use of data snapshots is insufficient to demonstrate that the claims substantially overlap when the patents relate to different discrete operations. D. 37 at 8-9. Despite Delphix's assertion that the

patents in the Northern District of California action are prior art to the Actifio patents and will serve as the basis for Delphix's invalidity defense, D. 8 at 7-8, they do not share the host of overlapping features that warrant application of first-filed principles here. See Abbott Labs., 2013 WL 2322770, at *15-16 (declining to apply first-filed rule because of three "substantive differences" between patents at issue: different subject matter; different inventors; and different prior art available based on an eleven-year difference in date of issuance). Finally, the Court does not credit Delphix's assertion that there are common claim construction issues as a result of the prevalence of the phrase "point-in-time" copy or snapshot in the patents, as Actifio notes neither party has identified the term as one requiring construction in the Northern District of California. D. 37 at 6 n. 3.

Although the allegedly infringing product, the Agile Data Platform, is accused in both actions and there will, therefore, be some overlapping facts, this is insufficient to find the Northern District of California action first-filed given the conclusions above. See Pragmatus AV, LLC, 2013 WL 4629000, at *11 (declining to apply first-filed rule "[i]n light of the fact that these cases involve different patents . . . the subject matter of the California Action (regarding claim construction, infringement and invalidity), while similar to that at issue in the instant litigation in some ways, would likely be different in others"). The Court is wary of broadening the rule further than circumstances involving identical patents or functionally duplicative actions. Sophos, Inc. v. RPost Holdings, Inc., No. 13-12856-DJC, 2014 WL 2434637, at *3 (D. Mass. May 30, 2014) (denying motion to transfer and applying first-filed rule when actions involved identical or duplicative actions); see Quad/Tech Inc. v. Q.I. Press Controls, No. 10-2243-CRB, 2010 WL 4722501, at *2 (N.D. Cal. Nov. 15, 2010) (applying first-filed rule when both actions "share similar technology, similar claim terms, and similar issues" in addition to a shared

inventor); Infineon Tech. AG v. Fairchild Semiconductor Int'l, Inc., No. 08-887-SLR-LPS, 2009 WL 3150986, at *6 (D. Del. Sept. 30, 2009) (applying first-filed principles and allowing the amendment of additional patent claims to original suit in part because the party opposing did not explain how the technical issues were different and because "all of the claim terms" required in one action appeared in the other). While the first-filed rule may apply to cases involving different patents, such as when the patents are functionally identical and share inventors and prior art references, among other factors, the Court cannot conclude in this instance that first-filed principles apply and warrant transfer of this case to the Northern District of California on this basis.

### B. Whether Transfer is Warranted under 28 U.S.C. § 1404(a)

Notwithstanding the first-to-file considerations, a court may transfer a civil action under 28 U.S.C. § 1404(a) "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a); see OsComp Sys., Inc. v. Bakken Exp., LLC, 930 F. Supp. 2d 261, 274 (D. Mass. 2013) (providing, "[h]aving concluded that the first-filed rule is not applicable to this case, this court must determine whether the convenience of the parties and witnesses, and the interests of justice, favor a change of venue"). The purpose of § 1404(a) "is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (quotations omitted).

Delphix bears a heavy burden at this stage, as "[n]ot only does the burden of proof rest with the party seeking to transfer; there is a strong presumption in favor of the plaintiff's choice of forum." Astro-Med, Inc., 591 F.3d at 13 (quotation omitted). This presumption is given even more weight when plaintiff selects its home forum as Actifio has done here. Kleinerman v.

Luxtron Corp., 107 F. Supp. 2d 122, 125 (D. Mass. 2000) (citation omitted). In ruling on a motion to transfer, a court may consider a number of convenience factors. F.A.I. Elec. Corp., 944 F. Supp. at 80-81 (citing Gulf Oil Corp., 330 U.S. at 508).

While there is a strong presumption in favor of the plaintiff's choice of forum, the First Circuit has advised that § 1404(a) "is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" Astro-Med, Inc., 591 F.3d at 12 (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)). Actifio contends "this case involves a Massachusetts company seeking to protect inventions developed in and being infringed in this state." D. 26 at 22 (citing D. 27 ¶ 17; D. 28 ¶ 3; D. 9 ¶ 7). Its headquarters is in this district, where all of its documents reside, including documents related to the inventions for the patents-in-suit. D. 26 at 21; D. 28 ¶¶ 2-5. Additionally, all of the Actifio-employed inventors reside in Massachusetts. D. 26 at 7. Delphix explains that it is more convenient for it to litigate the case in the Northern District of California not only because "significant overlap implicates the same evidence and witnesses in both actions," D. 8 at 16, but also because the bulk of its relevant documents are in California such as the technical, marketing and sales information for the accused product, id. at 22, and because duplicative litigation efforts will be "a waste of this Court's and the parties' resources." Id. at 17. The Court notes that Delphix has a Massachusetts office, where its Vice President of Engineering and nine engineers reside, located nearby in Somerville, Massachusetts. D. 9 ¶¶ 4, 7. Given these facts and that transfer would merely transfer any relative inconvenience from Delphix to Actifio, this factor weighs against transfer.

As to any deference Actifio's choice of its home forum, Delphix notes that Actifio originally filed this action in Delaware and voluntarily dismissed it following a request from

Delphix to transfer the case to California. D. 8 at 11; D. 8-17. Although the sequence of events shows that this district was not Actifio's *first* choice of forum, it remains its choice of forum and, in the absence of any evidence that the choice was motivated more as an attempt to vex or harass the defendant as opposed to by a desire to litigate on its home turf, Delphix still bears a heavy burden of overcoming the presumption in favor of Actifio's choice of forum.

As to the convenience of the parties, the Court notes that its analysis does not start on a blank slate as the parties are already engaged in litigation in the Northern District of California action. See Wiley v. Gerber Products Co., 667 F. Supp. 2d 171, 173 (D. Mass. 2009) (providing, "convenience should not be assessed in a vacuum . . . the proper inquiry is not whether Massachusetts is more convenient than California in the abstract but instead whether sanctioning a second, nearly identical action here is more convenient than transferring the case for the purpose of consolidation"). Although, as discussed above in the first-filed analysis, the case in that district involves the same parties and its litigation will involve some overlapping evidence, it does not involve the same patents and cannot be properly characterized as identical litigation. The Court notes, as discussed above, that some parts of the California case have been stayed as to the Delphix patents, but a Markman hearing as to the Actifio patents has been scheduled for August. To the extent that the same parties are involved in the California case that is already underway, this factor tips in favor of transfer, but only slightly where the actions are not duplicative.

The consideration of convenience for witnesses "is probably the most important factor" in a § 1404(a) analysis. Boateng v. Gen. Dynamics Corp., 460 F. Supp. 2d 270, 275 (D. Mass. 2006) (quotation omitted). This factor concerns mainly non-parties, as the parties' employees will testify regardless of the venue. Kleinerman, 107 F. Supp. 2d at 125-26 (providing "[i]f,

13

however, a court order or the persuasion of an employer who is a party to the action can secure the appearance of witnesses regardless of the location of the forum, [this] factor becomes less important"). This factor is neutral as to transfer as both parties point to third parties that they claim will be material witnesses at trial, but may be beyond the subpoena power of the court of the other's choosing. Even assuming that at least some relevant witnesses will be called testify in the Northern District of California matter, transfer would result in less inconvenience for witnesses who would called in this matter, but that is only assuming this matter is consolidated upon transfer with the matter already underway in California. Even so, this factor remains draw between the parties as the perfect overlap of evidence does not follow from the imperfect overlap between the issues in the two cases. As to third party witnesses, on one hand, Delphix notes several of its key fact witnesses are no longer employees and are located in California, namely Charles Zha, Delphix's co-founder and its first Chief Technology Officer, and Alok Srivisatava, Delphix's former Vice President of Engineering. D. 8 at 21-22. Both would testify as to the development of Delphix's products and the relationship between Delphix and Actifio's founder during the relevant period. Id. On the other hand, Actifio contends that a key non-party witness, Mark Roman, one of the inventors of the '769 patent and the individual primarily responsible for interacting with the patent prosecution attorneys regarding the '769 patent, is located in Massachusetts and is no longer an Actifio employee. D. 28 at 8; D. 27 ¶¶ 15-16. Neither party explains fully why former employees would not appear voluntarily (or why their testimony might not be available in another form, namely testimony by deposition), but even crediting the suggestion that they would not do so (or even considering the cost of obtaining willing witnesses), this factor is a draw, not weighing in favor of or against transfer.

As to the relative ease of access to sources of proof, Actifio explains its inventions concerning the patents at issue were developed, tested and sold in Massachusetts, D. 26 at 7, and that the infringing conduct has occurred and is occurring in Massachusetts, id. at 22. Delphix provides that the majority of relevant evidence is located at its headquarters in California, including "its technical, marketing and sales information for the accused" product. D. 8 at 22; D. 9 ¶ 6. In addition, Delphix offers "the same documentary evidence regarding the accused product will be required for both the California Action and Massachusetts Action." D. 8 at 18. The Federal Circuit has opined that "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." In re Genentech, Inc., 566 F.3d 1338, 1345 (Fed. Cir. 2009) (quotation omitted). Genentech, however, involved a case when the action was brought by a German company in the Eastern District of Texas, "a venue which indisputably has no connection to any of the witnesses or evidence relevant to the cause of action." Id. at 1340-41. Such is not the case here. Unlike that case, Actifio's patents were invented here and its sources of proof are based here, D. 26 at 15-16, even as Delphix's evidence is located in California. Even if this factor tips in favor of transfer, it weighs slightly in that direction, given the sources of proof located here.

As to practical problems associated with trying the case most expeditiously and inexpensively, the factor that weighs most heavily in favor of transfer is the interest of judicial economy given Delphix's contention that "[a]bsent transfer there will unnecessarily be duplication throughout discovery, scheduling, claim construction, motion practice and trial." D. 8 at 17. The Court agrees that the parties may have to engage in some duplicative proceedings as there is some overlap with the California action and that matter is already underway. Even as the

court in California has allowed for the possibility of consolidation of the patents at issue there if this Court allows the transfer of this action, D. 44-1 at 4, this Court, in the first instance, must weigh all of the § 1404(a) factors before deciding if transfer is warranted. Moreover, that there is overlap between the matter here and there, but not mirror identity between the matters at issue in the California action and this action, also suggests that even as this factor weighs significantly in favor of transfer, this factor alone is not sufficient to warrant transfer.[1]

In sum, balancing the § 1404(a) factors, only judicial economy and efficiency weigh strongly in favor of transfer, whereas the other factors are neutral, weigh against transfer or tip only slightly in favor of transfer. That is, as a whole, these factors do not weigh in favor of transfer. With this balance, Delphix has not carried its heavy burden against Actifio's choice of its home form.

---

[1] To the extent that Delphix points to other considerations—namely, the danger of inconsistent rulings or the public interest—neither of those considerations supports transfer. Further, Delphix contends there is a risk of inconsistent rulings because "Delphix's trade secret claim in California overlaps with its derivation defense here, as an element of each requires showing that Actifio obtained information from Delphix." D. 8 at 18. Additionally, a question in both the Northern District of California and the instant action will be "who came up with the database virtualization technology first." Id. at 18-19. Actifio counters that "[the trade secret claim in the Northern District of California] involves whether Actifio misappropriated information that constitutes a valid trade secret, and the [District of Massachusetts claims] involve[] whether the subject matter of those documents—whether or not they are a valid trade secret—maps onto the claims of the patents in suit here." D. 26 at 23. Even as there are overlapping issues in the two cases and even accepting Delphix's characterization of the trade secret claim and its connection to any defense here, any concern about inconsistent rulings is no greater or lesser than the pendency of parallel proceedings and the parties, the same in both proceedings, may advocate for coordinated scheduling of the proceedings as they may see fit. As to its argument about the public interest, the Court is unconvinced by Delphix's argument that it has a right to explain the underlying factual story to only one jury, particularly as the patents at issue are different and the claims will differ despite the similarity in underlying technology. The patents at issue here were invented in Massachusetts and, therefore, there is at least some public interest in having this action decided here.

## VI. Conclusion

For the foregoing reasons, Delphix's motion to dismiss, stay or transfer, D. 7, is DENIED.

**So Ordered.**

                                                /s/ Denise J. Casper
                                                United States District Judge